I'd like to reserve about 7 minutes. Just keep track on the clock right there. All right. Thank you. May it please the Court, my name is Bill Bankston. I'm the attorney representing Trading Bay Energy Corporation. My client, Paul Craig, is a one-man corporation, and this case involves Trading Bay's complaint, the dismissal of the trial court in a case arising out of Cook Inlet against Marathon Corporation and Unical Corporation. I think at the outset it's important for the Court to realize that in interpreting the contract that was entered into in this case, the contract is between Trading Bay Energy Corporation and someone that is not a party to this case. Marathon and Unical were not parties to this The Court did not, so in interpreting that contract, the Court did not recognize the extrinsic evidence that was introduced in the summary judgment motion when the Court dismissed this case. Extrinsic evidence showed that Force Energy believed that this case extends, in essence, this is what you could call a back-end working interest. There is no interest in Trading Bay. Trading Bay sold all of the working interest to Force Energy. At subsequent, through subsequent assignments, the lease was assigned, the working interest was assigned to Marathon and Unical. So the first thing is the Court ignored the testimony of a person that's not a party, but a person who drafted the contract as to what this contract meant. The second thing the Court did is the Court did not consider the conduct of the contract was drafted. Unical, in this case, the same situation came up before Unical had assigned this case to Marathon, and Unical participated in how the original parties to the contract envisioned that this contract would be interpreted. That is that Force Energy or Force Oil, now Unical and Marathon, would be, would say, would give notice to Trading Bay to drill a well on the lease or within the unit, and Trading Bay would be allowed the opportunity before any well was drilled, would be given the geophysical data, and would be allowed the opportunity before any well was drilled to participate in that prospect. So there is no carried working interest, there is no royalty, there is no, Trading Bay does not own any interest in this lease. Trading Bay has, in essence, an option contract. It has an option that Marathon and Unical refused to honor. Marathon and Unical, at that juncture, formed a unit. It was within their power to determine what leases went in the unit. Marathon and Unical then included one of the leases that's in the letter agreements in the unit. Marathon and Unical then do not give notice to Trading Bay, and once Marathon and Unical had decided to drill in a well that, for regulatory purposes, is located on this lease within 1,500 feet of the lease in question. Now, where did that 1,500 feet come from? That comes from... I've seen that. The first time that appeared was on the motion for reconsideration. That's correct, Your Honor. That 1,500 feet... A little late, wasn't it? What's that? A little late, wasn't it? That's correct. It was filed after the court rendered the decision, which the court held that there was a condition preceding to the contract that the oil and gas reserves had to lie beneath the actual lease. Let me see if I understand your argument, or maybe you can help clarify it for me. So your position is that once Unical unitized, and incorporated this one particular lease, let's say, in its unit, that automatically gave you a right to back in a working interest, and or if I'm wrong, a production right, to any well that's drilled in any spot on that unit. Is that the argument? That's correct. Even if they drill down and they draw whatever they're drawing, oil or gas, whatever this is, and it doesn't ever come from any of the leases that you're dealing with? That's correct. That's the argument? That's the argument. Okay. It's much like where Marathon has 60% and Unical has 40%. How do you, tell me, if you look at this clause, how do you, how do you get that interpretation from this provision in the contract? December 10th, 1997 letter agreement states, seller's right to participate in said well, as well as any future wells drilled on the same lease or unit. Wait a minute. If you go to the very first sentence, it says, seller shall have the right to participate for up to 10% working interest in any well drilled on the lease as identified in Exhibit A. That's correct. But you're claiming right regardless of who owns the lease? You're claiming it's right regardless of who owns the lease? Yes. And you can't just read the first sentence as a condition perceived to the whole contract, because in the letter agreements, they use the word or unit in the disjunctive, referring to participate in the same lease or unit, but you'll have no effect. You know, it kind of makes, you know, I'm not, I'm certainly not a gas and oil expert. I've never, it wasn't my area of practice before I became a judge, but, you know, it kind of makes sense to me that, you know, if you drill a well and you ended up drawing oil or gas from a pool, so to speak, and it dipped over into your lease and fell beneath your lease, that you, under this lease, you might well be entitled to a working interest in that well and or to a production interest in that well. But what you're saying is a little bit different. You're saying any place on that unit, wherever they draw oil, because your lease was made part of that unit, unitization, you have a right to participate. That's correct, but I think, I think there's one thing. You know, I'm trying to make sure I understand your argument. All right. Because it seems to have shifted over time. It's not been entirely clear. With regards to the, with regards to the drilling the well and draining, in essence, your lease, the correlative rights, that's the 1,500-foot argument under the Alaska regulations. This well is considered to be, quote, unquote, on this lease. However, Your Honor, I think what the trial court completely misapplied what this agreement is. This is not an agreement where Marathon and Unical drill an oil well and say, oh gosh, we found oil, now do you want to participate? This is where they're supposed to say, we intend to drill a well, and therefore, here's the geologic data, here's the geophysical data. In Trading Bay, you have 45 days to decide whether you want to participate before a well is ever drilled, or it's ever drilled. So you put up your money in advance, and then the well is drilled, and if the well is productive, that's fine. If the well is not productive, you've lost your money. So it's not one where you're saying, okay, in some other part of this particular unit, we're going to drill a well, and if we hit, then you get to participate in it after a well is hit. All right. I'm trying to understand this case, too. How do you explain the disproportionate financial result from the interpretation of the letter agreement? For instance, according to expert testimony, the value of the right to participate in the Nittlechick unit far exceeds the value of the eight oil and gas leases subject to the assignment. I mean, it's just completely disproportionate. Are you saying that that was meant to happen? No. I'm saying, first of all, I don't think the Court should have considered the expert opinion in interpreting the contract. But secondly, Your Honor, there is no disproportionate result because all Trading Bay is doing is putting up its up to 1.58 percent interest before a well is ever drilled. It's like saying, I have a piece of ground out here. Sort of gambling, right? What's that? Sort of gambling on the result? They all gamble on the result when they decide to drill an oil well, but they're participating in advance of that. So there's no disproportionate interest. They're just like Marathon and Unical saying, we're going to drill a well here, put up your portion of the money, and they put up their portion of the money in advance. So it's not like they get any type of windfall at oil. They are risking their money along with Marathon and Unical. Prior to the time the well is drilled, there is no right to any ownership of any oil and gas anywhere under the lease or in the unit. Mr. Baxton, somehow I have a recollection in this case of there being a difference between a participating unit of wells and the general unitization of wells that included the, what I call it, the 314 well. That's correct. There's a difference between a participating unit and then the unitization of all the wells. Is that right? That's correct. What is the participating unit? Participating unit is where a well is going to be drilled in one part of the unit, and it is going to affect some other owner. It's a defined, it's a little circle within the big circle, or a little square within the big square. And the well 314 that we're concerned about here in this case was in the big circle, but it wasn't in the little participating circle. Isn't that correct? Except for the fact that the well block that was drilled was within 1,500 feet. Apart from the 1,500 feet. Apart from that. That's correct. So it really wasn't part of the unit that was formed for the development of the particular drilling that occurred in this case. It was not part of that participating unit. Isn't that right? Part of it was, Your Honor. But again, I want to go back to state that the Court thinks there's a disproportionate result. That is a fundamental misunderstanding of what the parties intended when they formed the contract. The parties intended, and the evidence is very clear that the parties intended, to state, I propose to drill a well and put up your not, in this circumstance, it is not like saying that you have to drill a well on this particular unit because you can't read that one sentence as a condition precedent to the remainder of the clause in the agreement. District Court said, yes, you could, because the interpretation that your client wanted to put on it, on that contract, the District Court said was not a reasonable interpretation under Alaska law. Isn't that correct? That's what the District Court concluded. And what is wrong with that? What is wrong with that? It ignored the testimony of the other party that drafted the contract. Well, I thought the District Judge considered that testimony, but considered the extrinsic evidence presented by Marathon and Union Oil about custom and usage in the oil and gas industry. Well. And said under that, this particular interpretation placed upon the contract by your client would not be reasonable. And therefore, he wouldn't do it. That's what the District Court concluded. Yes. But the District Court, that is what the District Court concluded. But again, the District Court missed the entire focus of the contract, which is at the beginning of it. The custom usage in the oil and gas industry, as it relates to this contract, the contract trumps that custom and usage because the contract defined what the parties wanted to do. Yes. Okay. All right. Counsel, you referred to Hannah Well, and you argued that the prior conduct related to Hannah Well supports your argument. But as I look at Hannah Well, it seems to be distinguishable since the Well was proposed to be drilled on leases that were subject to the letter agreement. In contrast, the Well is proposed to be drilled on a lease not subject to a letter agreement. Did I get that right? Yes and no. Okay. In the Hannah Well, the first thing is that Marathon and Unical denied any existence of this contract initially. They said, we don't even know anything about it, when Unical clearly knew about it. And in the method in which that prospect was offered to Trading Bay, it's we propose to drill a well. Part of that drilling block is going to be very close to the Hannah Well. So it's not exactly on the lease. So part of that, and we're going to give you the geological data, you're going to have 45 days to decide whether you want to participate in it or not. So the whole idea that this contract, in essence, trumped the regulations of the oil and gas industry, the custom and usage of how Marathon and Unical normally do business, was evident in the course of dealing with Unical. That well was not completed. It wasn't even begun. They didn't even begin to drill it. So then, at a later time, after the unit is formed, Marathon and Unical deny any existence of the contract. And then, of course, Marathon did offer Trading Bay to participate with a 48-hour cash call. Did offer to allow them to participate. And that led to litigation. I'll reserve five minutes. Good afternoon. May it please the Court. My name is Kyle Parker, and I'm here today on behalf of Marathon Oil Company, which is the operator of the Ninilchik unit, and then Unical, Union Oil Company of California, known as Unical, which is the other working interest donor, and then Ninilchik unit, which is the unit at question. Ginsburg. Counsel, would you please keep your voice up? I'm sorry? Would you please keep your voice up? Oh, certainly.  I'm missing some of your words. I intend to keep my remarks brief here today, as the appeal before you is a straightforward matter of contract construction. And Judge Beislein, Alaska State Superior Court judge who has decades of applying substantive Alaska contract law, he got this one right. In its order below, Judge Beislein determined that a condition precedent, a condition necessary to trigger any and or all rights plaintiff may have under the agreements at issue, had not occurred. That was the drilling of a well on one of the eight leases that were transferred to Force Energy. Now, my opposing counsel referenced a few things which I'd just like to clarify in how Marathon came to be the owner and operator of these leases. This is all laid out in the briefing, but just for clarity's sake, Mr. Craig transferred eight leases to a company called Force Energy. Force Energy entered into these two-letter agreements that are at issue here. Subsequently, they transferred those leases to Unical, and then Unical turned to Marathon and brought Marathon into the arrangement and made Marathon the operator of the agreement. Mr. Craig and Mr. Bankston have suggested that somehow we were denying the existence of the contracts.  We were wholly unaware of the contracts. As we've laid out in our briefing, Marathon's the operator of the unit. We formed the unit. We worked with the state of Alaska, and this is an important point. The mineral interests that are being developed here are the state of Alaska's mineral interests. We're only their lessee. And the state of Alaska has laid out a rational regulatory process for the development of its interests. That regulatory process— Completely unaware of trading bank? Unaware of the letter agreements that were at issue here. Marathon is operator was at the time. That's not relevant. No, I know, but I'm just—it's kind of— Well, and in part, the reason why we were caught— These are big players. Well, when lawyers— We went forward— Instigated people. As it's laid out in the briefing, we went through the process the state lays out for establishing a unit. We gave public notice to everybody. We said, hey, we're forming a unit. Anybody who has an interest in this unit, step forward and let us know about it. Mr. Craig, he even admitted that he was there at some of the public hearings, yet he never stepped forward and said, oh, by the way, you guys, I've got this letter agreement with one of the former lease owners, and I'm expecting you're going to honor this. It wasn't until the 11th hour, when we were going forward to drill what's known as the Abalone Well, and, Your Honor, you referred to it as the 314 Well. Well, just for clarity's sake, there was never a well drilled on this lease in question. We know that. Okay. It's the Abalone Well. It was drilled on an adjacent well. Subsequently, late in the game, Mr. Craig brought forward the spacing regulations that the state has. That all falls into the clear, rational development process that they've established to protect the rights of everybody. It doesn't modify the contract that Mr. Craig had with Force Energy and somehow make that on the 314 lease. It was a condition precedent. Judge Weisman. Wait a minute. Now, are you arguing that even if this letter could be construed as an obligation of the other party, which I guess would be Force Energy, to recognize this right of the plaintiff in this action, you're not bound by that because some way or another it's not a binding? No, not at all. And we're not contesting the validity of this. That's what your argument sounds like rather than talking about whether the interpretation of the district court was correct. And I'm sorry if I was unclear. I mean, we're not arguing that. We're not bound to live up to the agreement that Mr. Craig had with Force Energy, which we've got to live up to it, whatever it is. But it's what the district court said it was. Is that the argument? Yes, sir. And the district court got it right. The very first sentence of paragraph 11 of the letter agreements establishes a condition precedent. If we are going to drill a well on the 314 lease, we're obligated to come up, come to Mr. Craig and give him an opportunity to participate as it's defined therein. The district court's construction of paragraph 11 is completely consistent with Alaska law. Why? Because there was testimony that as long as this lease, 314, was in the unit, and it was in a unit, although not in the participating unit, apparently. Does that make any difference? If I might, when the State law has established a process that goes from leasing all the way to development and production. And the way it works, the State will offer leases, companies, any number of them come in and can buy leases. Then they can form a unit. They can combine as many different leases as they care to into a unit. They have to have some justification from a geological standpoint as to why they'll attach all those leases. They'll form that unit. Then they'll get into doing some exploration work. Typically, they'll be shooting seismic, better developing the geology. From there, they'll define participating areas within that unit. And, in fact, in an Inilchik unit, we have three participating areas. And those three participating areas are in production, producing gas from three participating areas within the unit. The 314 lease is not part of any producing participating area. That's what I understand. Right. So, and there is no part of the 314 lease that's in a participating area at this point. Suppose it were. At some point, if we're at the point where Marathon and the geology establishes that we're going to go on to the 314 lease to drill a well. We're going to put the 314 lease into a participating unit. Correct. You don't have to drill on the 314. Then, to be consistent with what's in these letter agreements and also consistent with Alaska law, we'd be obligated to live up to Mr. Craig's agreement. And what's important here from the standpoint of Alaska law, I mean, the correlative rights of all interest donors, there's a mechanism in place in Alaska. And we brought this up at the district court. You know, the district court chose one reason to balance the case on summary judgment. Another one we offered was the administrative law issues. And there is a process in Alaska law that Mr. Craig can pursue with our Alaska Oil and Gas Conservation Commission and our Department of Natural Resources. You know, we're trying to determine whether or not the district court was correct in what it did. And it listened to the position of the plaintiff here. I'm sorry, I can't remember his name. And what he said this obligation meant. And there was apparently no evidence to the contrary as to that. And it created some ambiguity in the contract as to what it meant. And it could well mean that if that would be a reasonable interpretation of the contract. And the district court said, but it would not be because of evidence you put on. Is that right? Or am I wrong in that analysis? I guess getting back to the district court's decision here, the district court determined that there's a condition precedent in that very first sentence. And there wasn't a well drilled on this lease. Therefore, any rights that flowed out of the remainder of Paragraph 11 hadn't been triggered yet. And we agree with that completely. Excuse me. Do you agree that the contract is ambiguous? No, we don't think the contract is ambiguous. We agree with the district court judge that it is. We don't concede that it is ambiguous. We agree with the district court judge that there is clearly a condition precedent in the first sentence of Paragraph 11. And what was the reference to leases or units in the rest of the paragraph? What was the purpose of that? I mean, is that just there for the record? Actually, no. In the context of oil and gas law, it's logical what happens here. The very first sentence establishes the condition precedent. If you're going to drill a well on any of those eight leases, you're obligated to offer Mr. Craig the opportunity to participate. The next several sentences of that agreement talk about how we're obligated to give him that notice. And, again, it's a notice when we're going to drill a well on one of those eight leases. Then the next set of sentences all talk about, and this is where the word or unit comes in, the next set of sentences all talk about the impact of Mr. Craig's decision, whether he decides to participate. The very first sentence where the word or unit appears talks about if Mr. Craig says, nope, I'm not going to participate. In that sentence, what it's saying, it's a one-time-only opportunity form, so it's saying, Mr. Craig, if you choose not to participate, your option is forever foreclosed if we're going to drill another well on this lease or in a unit. And this goes to your point, Your Honor. If we were to establish a participating area, it might not be on his lease. We might be drilling a well there. But he's already chosen not to participate, so you can't participate in the drilling of that well in the participating area established. The very next sentence talks, where the word or unit appears, talks about if Mr. Craig does participate. And there, the qualifier, and it's important here, to go back to the first sentence, it says you can participate for up to a 10 percent working interest. In that sentence later on where it talks about if you do choose to participate, whatever percentage interest you're going to participate in, that will be your interest forever. And those are, again, construction paragraph 11 that Judge Beisling came up with is absolutely consistent with Alaska law, industry practice, and it's – Well, now, that's what your witnesses tested or stated in their declarations or whatever. Yes, sir. Our expert witness was a gentleman named Jim Eason, longtime director of the Division of Oil and Gas in Alaska and responsible for protecting the State's interests in oil and gas. Now, did the district court say, yeah, you know, that makes sense to me and it would be unreasonable to interpret this the way Mr. Craig wants us to interpret it? I believe the district court did say that. Yes, sir. What about the depositions, the extrinsic evidence? Under Alaska law, as I understand it, and please correct me if I'm wrong, in order to determine whether or not the contract is ambiguous, extrinsic evidence is permissible. Is that correct? Extrinsic evidence is permissible as long as it was contemporaneous with the time  of the contract. Okay. We had here the depositions of Russell Porter and Gary Colson, which appear to support Trading Bay's interpretation of the contract. What is your response to that? Well, we don't – we don't view – I don't think Mr. Carlson's deposition testimony does support the interpretation that Mr. Craig has on the letter agreement. That we wouldn't agree with. But in terms of Mr. Porter's testimony, we don't even give it the interpretation that – that Mr. Craig would like, and I can explain why in a moment. But the reason why we don't believe the testimony, the deposition testimony of Mr. Porter or even Mr. Carlson is relevant here. It's not contemporaneous with the time of contracting. There just simply is – But you're spraying from what Judge Nelson is asking. Suppose it was. Suppose that evidence was accepted. Okay. If Mr. Porter's deposition testimony were a letter, Mr. Porter is not saying in that deposition what Mr. Craig would have you – have you accept at this point. Mr. Porter is not saying that Paul Craig is entitled to participate in the financial gains. Didn't your witnesses say that that would be unreasonable, what he was saying? Didn't you put on some evidence of what the interpretation of that – this paragraph 11 should be, didn't you, or? I – we didn't address Mr. Porter's testimony at all. No, sir. Pardon me? We didn't address Mr. Porter's deposition testimony. Did you put on witnesses of your own who said what this should mean? Our expert witness in his affidavit supporting our motion for summary judgment does give an analysis about how Alaska law interplays with the – with the contract that's at issue, yes. Okay. Now, did that then refute the testimony of Porter? I wouldn't say it refuted it. I would say it clarified it. Because, again, what Mr. Porter says in his deposition testimony is not – Sorry. I may have infringed. Mr. Porter, in his deposition testimony, does not acknowledge the broad right that Mr. Craig is seeking here. And what he's seeking here is he's seeking – he's seeking a percentage of the production from across the unit. And that was simply never contemplated in the letter agreements that were executed with force energy and subsequently came to be applicable to Marathon and UNICAL, nor is it at all consistent with Alaska law. The only – Mr. Craig's entitlement to participate in the financial benefits of production only arises if the production is coming from under his lease. He's not entitled to participate in the production in any percentage all the way down at the bottom of the unit. The unit's some 60 miles long, probably about 7 or 8 miles wide. It's a huge unit. And his lease at issue is way up at the very top of the unit. And he's claiming entitlement to share in production at leases all the way down at the bottom. So you would have to at least read this. It was reasonably expected by the parties that he'd be able to participate in any – if there was a unitization, the parties reasonably expected that he'd be able to participate if the proposed drill was part of the participation area, correct? Yes, sir. Even if the proposed well was not on his lease? Yes, sir. So how does that jive with the first sentence? Well, again, these leases at the time that they were transferred to Force Energy and at the time the agreements were written, they were not part of any unit. They were stand-alone leases. And so it was only subsequent – But you've tried to put this – you've tried to – you've just – in answering Judge Thompson and Judge Nelson's questions, you put this all in the context of the oil and gas industry and the regulation in the state of Alaska and whatnot. And it looks like, from what you're telling us, so that they contemplated that he would be able to participate in a working interest. They had reasonably expected that so long as the proposed well was in the area that was defined as the participating interest, as Judge Thompson has brought out. Well, I guess – And again, that's the – that sounds to me like what's reasonably – what was the reasonable expectations of the parties. The problem here, Your Honor, is, though, and we're playing a game of what-ifs, we can't – Well, no, we're not. We're just looking at – we're trying to understand what this term is. That's not – Okay. I guess here's the difficulty we have in establishing a participating area. Only until wells have been drilled and we've been able to determine the extent of the reservoir that underlies the leases, we're not going to be able to establish a participating area until we have that information, until we've drilled the wells. So it's perfectly – it's a very not uncommon situation where we would drill a well, for example, the Abalone well on the adjacent lease, and determine that the reservoir underlies the 314. But it looks like what you're acknowledging is that Mr. Craig has a greater interest, greater working interest, than just that which is limited to the first sentence in the – in this paragraph. I'm sorry. That's not our intent. We are – And I think – I don't know. It's a difficult case is that language is, you know, not very good. Well, and I would say this. The clarification that was done in December of 1997, that was a clarification that was drafted by Mr. Craig. And that was where we were adding in all these sentences about the impact of his decision to participate or not to participate. That's where the word or unit first appears. If there's a drafting error here, it certainly shouldn't be charged against a marathon. We're – it's not the perfect contract. It's certainly not one marathon would have done. It's certainly not one that the state would have ever accepted as having any impact on its interest as the mineral owner here. Well, and – If I may. Yes, sir. I guess what I've been driving at is that the district court may have been wrong in refusing to hear or adopt Mr. Craig's interpretation of this agreement. But at the same time, what that would do is probably indicate that there was an ambiguity in this contract, looking at the contract and listening to that testimony. And perhaps an alternative ground for you to win upon would be if the district court considered evidence that the interpretation sought by Mr. Craig would not meet the reasonable expectations of the parties, which apparently seems to be the law of Alaska. And if that was so, then you'd still win. But you don't want to talk about that. Well, Your Honor, we think that this is a simple matter. The other way you went is okay with you, I know. Yeah. I mean, it's a simple matter of interpretation, contractual construction. And again, Judge Beistlein sat on the bench in Alaska and applied substantive Alaska law for many years. He's well aware of the Alaska precedent on the point that when there is a condition in a contract that it will be strictly enforced. And he determined that that first sentence set a condition and that it had not been met. Thank you. Thank you, counsel. Your Honor, this case reminds me of a case I had in front of the Alaska Supreme Court. I listened to the arguments. And from the questions and the responses of the attorneys, I said, you know, it seems to me that the contract is ambiguous. The judge did not, there was no trial in this case. The case ought to be tried. Because under Alaska law, the court enforces the reasonable expectations of the parties. Of course, the court looks at extrinsic evidence. There is no evidence in this case of Marathon and Unical with regards to the expectations of the parties. The record is not fully developed. And the last response to the question, Marathon's attorney said, well, that the contract was drafted by Paul Craig. I don't think that's particularly in the record. The April 14th letter agreement does mention, it says, the participation right for subsequent wells drilled on the same lease and or unit. So the word unit is mentioned in the April 14th agreement. I think the court now has an understanding that this is an option contract. It is an option to allow Trading Bay to participate in advance of any well being drilled. Participating areas are not used in the contract. It's not that Marathon and Unical are going to go out and drill an oil well and find oil and then say, oh, by the way, now that we drilled an oil well, these are the costs. And this is now you can elect to participate or not to participate. It's an in advance option contract. It's clearly a contract. As to what it meant, the trial judge disregarded the extrinsic evidence at the time of the kind that was made, and this contemporaneous argument, the cases that have been cited don't support that. And the courts in those cases relied, in the Western Pioneer and the Wyrom case, relied upon the deposition testimony given during the proceedings. I'm sorry, Your Honor. The problem with your argument is that you seem to have expressed an interpretation or an expectation, at least on your client's part, the right to participate in an area even outside the participating area of any proposed well. So long as it's drilled on any area of the unitized parameters. The big circle. The big circle. Any place. That's correct, Your Honor. You get to participate. Of working interest. Prior to the time of the oil well. Yes, correct. But as, you know, well, I understand that's your interpretation. You say that that was a reasonable expectation in light of Alaska law and everything else that was. In the contract interpretation, yes, Your Honor. Okay. And that is no different. What's interesting about that is that that is no different than what Marathon and UNICAL have today. They have an area of mutual interest where it's a 60-40 split, whether they own the leases or didn't own the leases beforehand. They say, you know, you participate, here's the real drill well. You participate or not participate. So it's an option contract. With that, and I think that's very clear. So I think at the minimum, at the absolute minimum, this Court should require a trial on the interpretation. I don't think that the contract is that ambiguous, but at least a trial should be had to allow the testimony to be developed, so then at that juncture, the reasonable expectation of the parties can be enforced. Because if not, then this contract has no remedy, and the very issue that Marathon and UNICAL can then never drill a well on these leases and deny any contractual remedy, because Trading Bay does not have the right to do anything, to nominate operations, to do anything with regards to the leases or the unit. It's only in response to their decision. Okay. Thank you. Thank you. We appreciate your arguments. The matter is submitted.
judges: D. Nelson, Thompson, Paez